RECEIVED
SDNY PRO SE OFFICE

2023 JAN 30  AM 9:46

United States District Court
Southern District Of New York

Robert McFadden (#14-B-3670)
(Plaintiff)

(—vs.—)

Case No.: Unassigned

William Keyser — (mistakenly omitted from Defendants section)
Gary Sipple
Kenneth Letus
Lisa Wilson
Ronald Miller
Anthony Rizzuto
John Papavasiliou
Anthony Carminati
Cory Proscia
Ogbonna Stanislaus
Kathleen Buttles
William Elberth
Edmund Puerschner
Mark Puerschner
Timothy Doelnck
Officer Kinne
Ryan Southard
Paul Holland
Steve Ryder
George Gilmour, Sr.
DHO Morrow, (Defendants)

## –Preliminary Statement–

① This is a civil action seeking relief & damages to defend & protect the rights guaranteed by the Constitution of The United States. This action is brought pursuant to 42 U.S.C. 1983 and 1988. Also the Religious Land Use And Institutionale Persons Act of 2000, 42 U.S.C. 2000 cc-1(a), and for the deprivations of the rights guaranteed by the First, Eighth, and Fourteenth Amendments of the U.S. Constitution & Due Process Clause, for several matters.

## – Jurisdiction & Venue –

② The court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 & 1343.

③ Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. section 1391(b)(1) & 1391(b)(2).

## –Parties–

④ <u>Plaintiff</u>: Robert McFadden (#14-B-3670) is a citizen of New York State & currently a prisoner at (Doccs): Mid-State Correctional Facility
9005 Old River Road
P.O. Box 2500
Marcy, New York 13403

## Defendants

⑤ Defendant Gary Sipple, was at all times relevant to this complaint an employee of DOCCS & served as the Deputy Superintendant for Security at Sullivan Correctional Facility, located at 325 Riverside Drive — P.O. Box 116 — Fallsburg, New York 12733-0116.

⑥ Defendant Kenneth Letus, was at all times relevant to this complaint an employee of DOCCS & served as a Captain at Sullivan Correctional Facility.

⑦ Defendant Lisa Wilson, was at all times relevant to this complaint an employee of DOCCS & served as a Sargent at Sullivan Correctional Facility.

⑧ Defendant Ronald Möller, was at all times relevant to this complaint an employee of DOCCS & served as a Sargent at Sullivan Correctional Facility.

⑨ Defendant Anthony Rizzuto, was at all times relevant to this complaint an employee of DOCCS & served as a Food Services Administrator at Sullivan Correctional Facility.

⑩ Defendant John Papavasiliou, was at all times relevant to this complaint an employee of DOCCS & served as a Head Cook at Sullivan Correctional Facility.

⑪ Defendant Anthony Carminati, was at all times relevant to

this complaint an employee of Doccs & served as a Cook at Sullivan Correctional Facility.

(12) Defendant Cory Proscia, was at all times relevant to this complaint an employee of Doccs & served as the Inmate Grievance Program Supervisor at Sullivan Correctional Facility.

(13) Defendant Ogbonna Stanislaus, was at all times relevant to this complaint an employee of Doccs & served as the Head Chaplain at Sullivan Correctional Facility.

(14) Defendant Kathleen Buttles, was at all times relevant to this complaint an employee of Doccs & served as a Nurse at Sullivan Correctional Facility.

(15) Defendant William Elberth, was at all times relevant to this complaint an employee of Doccs & served as a Correctional Officer at Sullivan Correctional Facility.

(16) Defendant Edmund Puerschner, was at all times relevant to this complaint an employee of Doccs & served as a Correctional Officer at Sullivan Correctional Facility.

(17) Defendant Mark Puerschner, was at all times relevant to this complaint an employee of Doccs & served as a Correctional Officer at Sullivan Correctional Facility.

(18) Defendant Timothy Doeinch, was at all times **relevant to** this complaint an employee of DOCCS & served as a Correctional officer at Sullivan Correctional Facility.

(19) Defendant Kinne, was at all times relevant to this complaint an employee of DOCCS & served as a correctional officer at Sullivan Correctional Facility.

(20) Defendant Ryan Southard, was at all times relevant to this complaint an employee of DOCCS & served as a Correctional officer at Sullivan Correctional Facility.

(21) Defendant Paul Holland, was at all times relevant to this complaint an employee of DOCCS & served as a correctional officer at Sullivan Correctional Facility.

(22) Defendant Steve Ryder, was at all times relevant to this complaint an employee of DOCCS & served as a correctional officer at Sullivan Correctional Facility.

(23) Defendant George Gilmour, Sr., was at all times relevant to this complaint an employee of DOCCS & served as a correctional officer at Sullivan Correctional Facility.

(24) Defendant DHO Morrow, was at all times relevant to this complaint an employee of DOCCS & served as a Designated Hearing officer at Sullivan Correctional Facility.

(25) The above "Sullivan Defendants" in this civil action brought by Robert McFadden(#14-B-3670), Pro-se, are being sued in their individual capacities & or official capacities. for acting under the color of law while violating the Plaintiffs rights under the U.S. Constitution & Federal statutes. For, assault & battery, cruel & unusual punishment, deliberate medical indifference, failure to protect, violations of due process, retaliation, filing a false misbehavior report, substantial burden on the right to religious exercise, as guaranteed by the First, Fourth, Eighth, & Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. 1983, and the RLUIPA.

(26) There are two previously filed lawsuits with the New York State Court of Claims related, that are still active. Claim NOS.: 134490 & 134622, titled Robert McFadden(#14-B-3670) -vs.- The State of New York.

(27) This complaint involves Four situations, which will be written out herein by chronology.

## — FACTS —

(28) The Plaintiff has been diagnosed by medical professionals as allergic to wheat, peanuts, and bananas. Having GERD, & an abnormal digestive system.

(29) If Plaintiff consumes the Allergens he suffers several

physical harm, including substantial pains, skin rashes, nausea, heart rate irregularities, dizziness, and vomiting.

(30) In 2016 while an inmate at Southport Correctional Facility, the medical department prescribed the Plaintiff a Gluten Free Special Diet order (the Diet Order), that upon information and belief directs Doccs facilities to not serve Plaintiff with any food that contains or could have been crossed-contaminated with the Allergens.

(31) Upon information and belief, the Diet Order also contains a list of foods that Plaintiff is to be served, and Plaintiff should not be served items that are also itemized, and items that do not appear on the list.

(32) This Diet Order has remained in place throughout Plaintiff's incarceration and is still in place today.

— A. Constitutional Violations of Plaintiff's Rights —

(33) In October 2019, Plaintiff was transferred to Sullivan Correctional Facility.

(34) Almost immediately Plaintiff contacted the Sullivan Correctional Facility Food Services Administrator Defendant Anthony Rizzuto via written communication, notifying him of his food allergies, & the diet order not

being followed by food Services.

(35) Despite this communication and his Diet Order, Plaintiff was served meals that contained the Allergens, or were missing items that were part of his Diet Order, including milk, meat, rice, rice cakes, and baked potatoes.

(36) Defendant's George Gilmour Sr., Paul Holland, William Elberth, Edmund Puerschner, Mark Puerschner, Steve Ryder, Ryan Southard, Officer Kinne, & Timothy Doeinck were all regular SHU feed-up officers, who regularly refused to call the Messhall for the correct meals, or missing items, & cross-contaminated meals from October 2019 through June 2020.

(37) Plaintiff began filing grievances in February 2020 due to the violations of his diet order.

(38) The rare times the defendants (at 36) contacted the messhall, nothing was done & Defendant's John Papavasiliou, & Defendant Anthony Carminati told the officers (at 36) that the tray of food sent would be all the Plaintiff would get.

(39) In or around March 3, 2020, Plaintiff asked Defendant Holland to contact the messhall, because his dinner meal included mashed potatoes, which contained flour, and

had chocolate pudding, which was not a food listed on his Diet Order.

(40) After contacting the messhall, Defendant Holland reported that Defendant John Papavasiliou, Head cook at Sullivan Correctional Facility, told him that his tray of food was all Plaintiff would get.

(41) Upon information & belief, Defendant Papavasiliou supervised the meals at Sullivan Correctional Facility & as such, played a direct role in providing Plaintiff with meals that contained the Allergens.

(42) Plaintiff also directly wrote to Defendant Papavasiliou requesting he follow Plaintiff's Diet Order, but Defendant Papavasiliou did not respond.

(43) Upon information & belief, Defendant Anthony Carminati, a cook at Sullivan Correctional Facility, also supervised Plaintiff's meals & had an active role in preparing Plaintiff's meals.

(44) Defendant Carminati prepared meals for Plaintiff containing the Allergens despite being aware of Plaintiff's Diet Order.

(45) On February 10TH, 2020 around 2 p.m. the Plaintiff

Notified Defendant William Elberth that he needed medical assistance due to stomach pains.

(46) Defendant Elberth returned to the Plaintiff's cell (SHU-253) with Defendant's E. Puerschner & SHU area supervisor Lisa Wilson. Defendant W. Elberth applied handcuffs onto the Plaintiff, via the Plaintiff placing his hands out of the cell door "feed-up port", once it was unlocked & opened by Defendant Elberth.

(47) A waist chain was attached to the handcuffs, to secure the handcuffs to the abdominal area, restricting all hand movements. The waist chain was applied while the Plaintiff's door was closed, by the Plaintiff turning in a circle, at officer Elberths orders, thus securing the chain around the waist through the feed-up port in the cell door. The clasp on the opposite end of the chain, held by Defendant Elberth, was latched onto a link through the chain, behind the Plaintiff's back, then secured by a Master Lock/pad lock attached behind the Plaintiff's back. Firmly restricting all hand & arm movements.

(48) Thereafter the Plaintiff kept his back to the door, the cell door was orderd to be opend, verbally by Defendant Elberth yelling to the SHU control console. The Plaintiff was then instructed to take two steps

backwards out of the cell, for the routine pat frisk upon exiting the cell for movement. Upon completion, the Plaintiff was escorted from SHU-253 cell to the facility infirmary without incident.

49) The Plaintiff was escorted by Defendant's Elberth, Lisa Wilson & Edmund Puerschner. "Escorting Defendants"

50) Upon entering the medical department, the Plaintiff was escorted to an examination room.

51) Defendant (Nurse) Kathleen Buttles enterd the room with a hostile demeanor & attitude, yelling "whats the emergancy?".

52) The Plaintiff responded "my stomach hurting".

53) Defendant Kathleen Buttles turned towards the hallway & yelled out "Oh my god, he's dying". Then faced the Plaintiff scowling & stated "What you want me to do?".

54) The Plaintiff responded with a matched tone & stated "Why is you talking to me like this". "I need something for stomach pain.".

55) Defendant Buttles responded by saying "Inmates

dont question how I talk & I dont like your attitude." Defendant Buttles then faces Defendants Wilson, Elberth, & E. Puerschner, & stated "He's done here". Defendant Buttles then left the room.

(56) The Plaintiff was then escorted back to SHU, directly to cell 253, with no words exchanged between the Plaintiff & the escorting Defendants.

(57) Upon reaching the Plaintiffs cell, the cell door was already opend. Plaintiff faced the doorway of the cell as Defendant Elberth removed the masterlock/padlock from the chain. However, the chain remained in place & secured by the clasp clipped onto a link of the chain. The Plaintiff also remained handcuffed.

(58) The Plaintiff was orderd to enter the cell. The Plaintiff took two steps forward into the cell, & kept his back to the escorting Defendants. The cell door was then orderd to be closed. The cell door was closed completely & the Plaintiff was secured inside SHU cell-253 without incident.

(59) It is to be noted, the cell door is opend & closed electronically. The control panel for such is located within the SHU control console, which has visibility of cell 253.

(60) Upon instruction, the Plaintiff turned to face the door. The Plaintiff respectfully requested to speak with another area supervisor. The Plaintiff told Defendant Elberth, that he wanted to speak with Defendant Lisa Wilson, as she was standing a cell away looking confused at her feet.

(61) The Plaintiff did not make any threats, pose as a threat, make any movements of aggression, or try to manipulate the waist chain. The Plaintiff was mechanically restrained & the door was secured shut completely.

(62) Without cause or justification, Officer William Elberth began to frantically wave his arm up & down, while looking up the hall towards the SHU control console. Defendant E. Puerschner followed with the same arm movements. Defendant Lisa Wilson never moved or spoke.

(63) At this signal from Defendants Elberth & Edmund Puerschner, the Plaintiff's cell door re-opend completely. As the door began to open, Defendant's Elberth & Edmund Puerschner took on a aggressive attack posture, preparing to charge into the cell.

(64) Defendant's Elberth & E. Puerschner rushed into the

Plaintiff's cell, violently striking the Plaintiff with closed fist punches to the head, face, nose, mouth, & body.

(65) No orders were given, both Defendant's Elberth & Edmund Puerschner repeatedly punched the Plaintiff until the Plaintiff was knocked to the ground. Due to being in mechanical restraints secured to a waist chain, the Plaintiff was unable to block any punches, nor protect him-self, & completely unable to retreat.

(66) Once on the ground, Defendant Edmund Puerschner continued to punch the Plaintiff repeatedly in the head & facial area, striking the Plaintiff in the mouth, nose, ear, neck, & shoulders. Then alternating to kicking the Plaintiff in the head & body. Causing extreme pain & discomfort & forcing the Plaintiffs head to collide with the ground repeatedly.

(67) Simultaneously, Defendant William Elberth grabbed the Plaintiffs left leg with both hands & twisted the Plaintiffs knee & ankle/foot with extreme force, causing extraordinary pain throughout the left knee, ankle/foot. After applying extreme pressure, Defendant Elberth momentarily released the leg, & began punching on the Plaintiffs lower back repeatedly in the kidney area, causing extreme pain in the lower back. Also causing the Plaintiff to urinate & defecate involuntarily.

Defendant Elberth then resumed grabbing the Plaintiffs leg & twisting the knee & foot with great pressure, causing extreme pain.

(68) Defendants Elberth & Edmund Puerschner both continued their assault in the above detailed manner for a length of time, over two minutes easily, no less than three. Causing the Plaintiff to bleed from the nose & mouth.

(69) Defendant Steve Ryder enterd the Plaintiffs cell after Defendant Lisa Wilson. Upon information & belief, he also assaulted the Plaintiff.

(70) Defendant Lisa Wilson stood by silently watching the attack. When the Plaintiff asked her to get the other officers off of him, she remained silent & continued to watch the assualt inside the cell.

(71) Defendant Mark T. Puerschner enterd the Plaintiffs cell behind Steve Ryder. Upon information & belief he also assaulted the Plaintiff.

(72) Upon ending the assault, Defendant W. Elberth told his supervisor, Defendant Lisa Wilson, to "call a code, but not a major code.", to which she followed only after the assault ended.

(73) Thereafter, the Plaintiff was picked-up off the ground, & placed upright in the corner of the cell facing the wall. Due to the profuse bleeding from the Plaintiffs mouth & nose, Defendant Elbertho placed a tee-shirt over the Plaintiff's mouth & nose to clean the blood from the Plaintiff's face & neck.

(74) The Plaintiff was then escorted out of SHU cell 253 & taken to the medical department.

(75) Upon arrival to the medical department, the Plaintiff met with Defendant Kathleen Buttles again, who refused to allow the Plaintiff to write a statement of the incident. Though the Plaintiff told her.

(76) The Plaintiff also told Defendant Buttles about the following injuries: chipped tooth, nose pain, busted lips, split gums, back pain, left knee & foot pain, neck pain, facial pain, wrist pain from the handcuffs & the Plaintiffs hands being pinned underneath him & kicked, abdominal pain, & involuntary urination & defecation.

(77) The Plaintiff asked Defendant Buttles to allow the Plaintiff to document his injuries stated above, which Defendant Buttles refused to allow as well.

(78) The Plaintiff requested Defendant Buttles to photograph the injuries to the Plaintiff's tooth, lips, inner lip & gum line, foot/ankle, arms, back, & legs. The Plaintiff requested to be photographed without pants & shirt, & only in his boxers (underwear). Defendant Buttles refused to allow, or take such necessary photos. She stated "Your not dead yet". Plaintiff was never examined.

(79) Only one photo was taken of the Plaintiff regarding the assault, after Defendant Buttles wiped the blood from the Plaintiff's head, mouth, & nose with a wet paper towel. This photo was taken by officer Farve from a distance of about Ten Feet, while the Plaintiff was fully clothed, seated in a chair with soiled underwear, still in mechanical restraints, secured with a waist chain & master lock/pad lock attached to the chain.

(80) The Plaintiff requested pain medication, dental services, & for x-rays to be taken of the Plaintiff's left foot, ankle, & knee, nose, & upper jaw bone area. Defendant Buttles denied all requests. Including the request for a ice-pack, back-brace, & ankle brace.

(81) Defendant Buttles knowingly filed a false report that omitted injuries & falsly reported (documented) that ~~refused~~ the Plaintiff refused photos being taken & refused

medical treatment. Defendant Buttles knew she was filing a false report & did so in collusion with the Defendants Elberth, Wilson, & E. Puerschner who spoke with her in the medical department at that time.

(82) Thereafter the Plaintiff was escorted back to SHU & secured in cell 253.

(83) At approximately 6 p.m. on February 10TH, 2020 Defendant Buttles came to SHU to deliver the p.m. meds to SHU prisoners.

(84) Defendant Buttles came to the Plaintiff's cell to issue his prescribed pain meds for pre-existing conditions. The Plaintiff restated his request to be fully photographed up close without clothes, with the opportunity to detail & document the Plaintiff's injuries & make a statement on the incident. Defendant Buttles stated she would notify security. She left & never returned, & the Plaintiff was never escorted to medical. This exchange was captured on SHU video & audio, outside SHU cell 253.

(85) There is a video camera & audio recorder mounted two to three feet across from SHU-cell 253, on the left side of "SHU Door 3-275-A". There is also numerous other video surveillance cameras & audio recorders

mounted throughout the entire SHU & cell 253 immediate proximately, which the Plaintiff will be submitting a discovery request for & presenting at trial.

(86) Defendants Elberth, Wilson, E. Puerschner & M.T. Puerschner conspired & knowingly filed false use of force reports & a misbehavior report on February 10TH, 2020.

(87) Defendant Elberth knowingly filed a false misbehavior report, a tier three, charging the Plaintiff with violating rules: 100.11 (assault on staff), 104.13 (creating a disturbance), 107.10 (employee interference), 109.12 (movement violation), and 113.10 (weapon). All charges being fabricated.

(88) The report alleged that C.O. Elberth was escorting McFadden back to his cell from emergency sick call. When they arrived at the cell, C.O. Elberth removed the lock from McFadden's waist chain & orderd him to enter his cell. Once inside his cell McFadden allegedly unclipped his waist chain in order to use it as a weapon. C.O. Elberth & C.O. E. Puerschner then enterd the cell to use force against McFadden, who allegedly kicked C.O. Elberth in the stomach. Which didn't happen.

(89) A Tier Three hearing on the misbehavior report was commenced on February 14TH, 2020, with Defendant

Kenneth Letus - (Captain) conducting the hearing as the Hearing Officer. Plaintiff pled not guilty to all charges.

(90) Defendant K. Letus violated the Plaintiffs due process rights throughout the tier hearing in various manners, such as the constitutional right to call witnesses, & the regulatory right under 7 NYCRR 254.5(a) to a written statement of the reasons for which his witnesses was denied. Also lying on record. In collusion.

(91) The Plaintiff testified that he had been fully compliant once inside his cell & that the force (assault) used on him was unprovoked & unjustified, prompted only by his request to speak to a supervisor. He further testified that it would have been physically impossible for him to manipulate the waist chain as alleged, or use it as a weapon behind a closed cell door.

(92) Initially the Plaintiff did not want to call any witness. His primary "witness" was the video/audio recording of the gallery & area in front of his cell. The video was played during the hearing, but no audio could be heard. After viewing the video, the Plaintiff objected. The audio was critical to the defense, so the Plaintiff asked if a "technician" could look at the recording & figure out the problem.

(93) Defendant K. Letus responded, "Let me check & see if we can make another video where the audio actually works on it, if it was a problem with the disc or if it's a problem with the system itself."

(94) Defendant Letus said nothing more about the audio until the following week. When the Plaintiff again stressed the significance of the audio to his defense, Defendant Letus said, "Well, there's nothing on audio. We've already been through that. The audio doesn't exist for this. The microphone wasn't working. The video has no sound except for a 'high pitch whine.'"

(95) The Plaintiff replied, "This is the first time you're saying that the audio is unavailable," to which Defendant Letus retorted, "No, we discussed this on record while we were watching it. That the audio did not work on that microphone."

(96) Contrary to Defendant Letus's assertions, the hearing record shows no such conversation was held. (Prisoners' Legal Services also obtained a copy of the video through a Freedom Of Information Law request & could hear some audio. According to Sophia Heller, Managing Attorney.)

(97) The Plaintiff then requested as a witness the technician Defendant Letus purportedly spoke to about the audio malfunctioning.

(98) Defendant Letus denied the request & stated:"We're taking our video from a computer bank. There's no audio, not for that incident."

(99) When the Plaintiff pointed out the presence of multiple microphones in the area & inquired about them, Defendant Letus merely said," Did not pick it up."

(100) Although Defendant Letus acknowledged he was unqualified to be able to answer the Plaintiff's technical questions concerning the video recording & audio, he continued to deny the witness (The Technician) request. The explanation documented on DOCCS FORM 2176 (Witness Interview Notice) reads:" The videos (sic) lack of audio was established. Testimony would be redundant."

(101) Without the ability to present any audio recorded during the incident, the Plaintiff sought to call several inmate witnesses. These individuals were in the cells adjacent to & across from the Plaintiff, who said the acoustics of the space made it extremely easy to hear everything going on in the SHU, & that was going on, even from inside of one's cell. Because no audio could be heard on the video played at the hearing, the Plaintiff wanted these witnesses essentially to provide the missing soundtrack. Of particular relevance to the Plaintiffs defense was the conversation that had taken place between him & Defendants Elberth & Pierschner

(Edmund) before the officers entered the Plaintiff's cell.

102) When the Plaintiff named his first witness, inmate West, Defendant Letus wanted to know only if West was in his cell or outside at the time of the incident. Defendant Letus did not ask about West's anticipated testimony or relevance to the Plaintiff's defense.

103) Plaintiff explained that he wanted West to attest to what he heard, not what he saw, to which Defendant Letus responded: "I'm gonna deny that at this time because the inmate was locked in his cell. He couldn't possibly see what was going on."

104) When the Plaintiff again referenced his conversation with the officers (Elberth & E. Puerschner), which had lasted for at least 45 (Forty-Five) seconds, Defendant Letus said: "Okay, and I've got testimony from both officers & the Sergeant saying there wasn't really any discussion going on."

105) In addition to denying West as a witness, Defendant Letus denied four other inmates requested by the Plaintiff, for the same reasons. The written explanation on DOCCS FORM 2176 was virtually identical for all five (5) witness denials: "(Inmates Name) was unable to see inside inmate McFadden's cell due to the physical layout of the unit, and therefore could offer no testimony to inmate McFadden's actions in the cell."

(106) Early on in the hearing Defendant Letus announced his intention to call C.O. Elberth & E. Puerschner as witnesses. When it was time for them to testify, the Plaintiff asked for an adjournment, as he had requested some case law & certain DOCCS regulations, but the law library services had not yet come to the Plaintiff's cell & he was thus unprepared to question the officers. Defendant Letus wanted to move forward with calling the witnesses, but told the Plaintiff that: "If we need to recall them again so you can re-question them I can do that a later date."

(107) Defendant Elberth then testified. After Defendant Letus asked his last question of Elberth, he asked the Plaintiff: "Do you have any questions, or do you want to wait?". The Plaintiff stated he was reserving his right to call the officer (Elberth) when he received the documentary evidence he had requested from law library. Defendant Letus said: "Okay."

(108) Officer E. Puerschner was the next witness. After questioning Defendant E. Puerschner, Defendant Letus again asked the Plaintiff: "Do you have any questions for the witness at this time, or do you want to wait?". The Plaintiff said he had two quick questions, but still reserved his right to call the officer as a witness when he was fully prepared, to which Defendant Letus replied: "Thats fine."

(109) Both Officers Elberth & E. Puerschner testified falsely, & knowingly did so, with their testimony conflicting with inconsistancies. Defendant Lisa Wilson testified falsely, & knowingly did so, in collusion with Elberth & E. Puerschner, with her testimony also inconsistant & conflicting with the video evidence & the false testimony of the officers. The cell door was fully closed.

(110) Defendant Letus allowed Defendant Mark Puerschner to knowingly & falsely testify to being the third officer to enter the Plaintiffs cell, which conflicted with the video evidence. Defendant Steve Ryder is shown as such.

(111) During a pause in the hearing recording, Defendant Letus told the Plaintiff off the record: "If I was them & you held the chain I would've went in there too." Implying he would've beaten the Plaintiff as well.

(112) The Plaintiff objected to Defendant Letus conducting the hearing based on his off the record statements & biasness.

(113) The following week the Plaintiff asked Defendant Letus to recall Officers Elberth & E. Puerschner. He wanted to question them both on their use of force, & their determination that force was necessary - questions the Plaintiff had been unable to ask previously without

the pertinent regulations on hand: Title 7 NYCRR 251-1.2 "Use of Force". But now he had the materials he had requested from the law library. & explained such to Defendant Letus.

(114) Knowing the Plaintiff had the use of force regulations & intent to question the officers based on violating 7 NYCRR 251-1.2 (c)&(d), Defendant Letus denied the Plaintiff's request to recall the officers, stating: "I feel like everything we're looking for has been covered."

(115) Defendant Letus did not provide any written explanation on Form 2176 for denying the Plaintiff's request to call Officers/Defendants Elberth & E. Puerschner. After he stated he would recall them both, on record, once the Plaintiff was prepared with his legal material.

(116) The hearing concluded on February 27ᵗʰ, 2020. The Plaintiff was found guilty of violent conduct, assault on staff, & interference with an employee. The Plaintiff was found not guilty of possessing a weapon & movement regulation violation. The record established that the waist restrain chain "could not be considerd a weapon", & the facts in evidence were insufficient to make out a movement violation. Notably, the Plaintiff, which records show, was never charged with violation of a direct order (106.10). Plaintiff received a penalty of 180 days SHU and corresponding loss of all privileges.

(117) The Plaintiff was deprived of his constitutional right to call witnesses by Defendant Letus improper denial of witnesses as redundant & irrelevant.

(118) The Plaintiff repeatedly stated throughout the hearing that his defense hinged on what was said during the incident. When Plaintiff discovered the audio track from the video footage could not be heard, Plaintiff had every right to question the nature of the problem & see if it could be rectified.

(119) Defendant Letus agreed. He said he would "check & see if we can make another video where the audio actually works" or if there was a "problem with the system itself."

(120) Defendant Letus never actually looked into the problem, the next time he spoke on the matter was to deny the Plaintiff's request to call the technician, stating, "We've already been through that. The audio doesn't exist for this. The microphone wasn't working." Nothing in the record supports this conclusion, which Defendant Letus tried to mask by falsely stating: "We discussed this on record while we were watching the video." This is patently false, & Defendant Letus knew his statement was false.

(121) Defendant Letus feigned to have no idea whether the problem with the audio was with their copy of the video or with the whole recording system, & promised to look

into it only after he & the Plaintiff watched the video together & the Plaintiff discoverd the soundtrack could not be heard.

(122) In the absence of any evidence of the steps Defendant Letus took to investigate the audio problem & how he reached the conclusion that no audio existed, testimony from an audio-video technician would not have been redundant.

(123) Not only did Defendant Letus fail to provide a good-faith reason for denying the technician, he clearly acted in bad faith by knowingly misrepresenting the facts.

(124) Further, counsel's ability to hear audio on the disc received through FOIL belies Defendant Letus false statement that no audio existed.

(125) Upon information & belief, Defendant Letus collusded with Defendant William Keyser, the superintendant of Sullivan Correctional Facility, to preclude the audio from the video footage & the technician from the hearing, due to inmates screaming "get off him" & "stop hitting him". Also the Plaintiff screaming for help, saying "Sergeant get them off me".

(126) Defendant William Keyser appointed Defendant Letus to conduct the hearing, then denied the Plaintiffs request for a descretionary review afterwards.

127) Plaintiff's inmate witnesses were improperly denied as irrelevant.

128) Because the Plaintiff could not use the audio recorded during the assault as part of his defense, his next best option was to call inmate witnesses who could attest to what they heard. Defendant Letus had implicitly recognized the relevance of the audio when he promised to look into its potential malfunctioning (even though he did not follow through), but summarily denied each witness because they were locked in their cells at the time.

129) In so doing Defendant Letus tampered with the Plaintiff's ability to present a meaningful defense for reasons that could only have been made in bad faith & at the instruction of Defendant Keyser & in collusion with Defendants Elberth, E. Puerschner, M. Puerschner, Steve Ryder, & Lisa Wilson.

130) DOCCS regulations authorize hearing officers to deny witness they deem irrelevant. But in this instance, the record clearly cements the witnesses as material to the Plaintiff's defense.

131) Indeed, Defendant Letus even backtracked from his original reasons for denying the inmate witnesses. After the Plaintiff explained that he sought these witnesses for what

they heard of his encounter with the officers at his cell,
Defendant Letus said: "Okay, & I've got testimony from both
officers and the sergeant saying there wasn't really any
discussion going on."

(132) Denying the inmate witnesses because Defendant Letus
did not credit Plaintiff's testimony that he & the officers
at his cell conversed for at least 45 (Fourty-Five) seconds is
another egregious example of Defendant Letus riding
roughshod over the Plaintiffs due process rights.

(133) In this instance, Defendant Letus made a credibility
determination before all the testimony was taken. Had
any inmate witness testified on conversations overheard
between the Plaintiff & the officers at his cell, Defendant Letus
could later, when it was time to render the disposition, choose
to credit officer testimony about the lack of conversation
over any inmate witness testimony to the contrary.

(134) Instead, Defendant Letus used officers testimony as a
reason not to call any of Plaintiff's requested inmate witnesses.
This justification for denying witnesses is not one of the few
permissible reasons for denying a witness. Although the reason
for the denial indicated on Form 2176 (irrelevance) is technically
a permissible reason, it is invalid here insofar as the record
is devoid of any rational or good-faith reason for denying these
five (5) inmate witnesses. Whether on relevance or other grounds.

(135) Officers Elberth & E. Puerschner were improperly denied as redundant. Although no written reason for the denial was provided, after some discussion on what the Plaintiff planned to ask Officer Elberth & E. Puerschner, Defendant Letus said; "I feel like everything we're looking for has been coverd.", & denied Plaintiffs request.

(136) The witnesses were not redundant, because for the Plaintiff it was as if they had yet to be called in the first place. Acting in reasonable reliance on Defendant Letus's expressed offer to recall the witnesses, the Plaintiff intentionally refrained from asking Defendant Elberth any questions, which he clearly wanted to do based on the law library materials when he was better prepared.

(137) Defendant Letus unambiguous promise to recall the officers when the Plaintiff was fully prepared demonstrates that he would not have considerd them redundant at all. Rather Defendant Letus wanted to preclude the officers being questioned on the record about violating title 7- -NYCRR 251-1.2 (c) &(d). By denying the Plaintiffs request to call officers Elberth & E. Puerschner, Defendant Letus actively prevented the Plaintiff from questioning two key witnesses, which included the author of the misbehavior report (Elberth). Denying two material witnesses for no legitimate reason unquestionably violated the Plaintiffs constitutional

right to call witnesses. Nor did Defendant Letus offer any reason in writting for his decision to deny recalling Defendants Officer Elberth & E.Puerschner. As he did not execute a 2176 form, & failed to satisfy the plain terms of 7 NYCRR 254.5(a). Which deprived the Plaintiff of a regulatory right.

(138) Defendant William Keyser reviewed the hearing & disciplinary disposition on 3-2-2020 & determined that all was appropriate with no change in penalty.

(139) Defendant William Keyser also knowingly generated a false report on 3-12-2020 regarding HOS use of force report review & evaluation. In which he falsely reported: "Amount of force used as described appears appropriate to regain control of the inmate who pulled away from staff and had a loose waist chain..."

(140) Defendant Keyser knew the Plaintiff never pulled away from Staff, as Staff never alleged such & video footage clearly shows the Plaintiff being locked into his cell without incident & the door being completely closed after the Plaintiff enterd the cell.

(141) Defendant Keyser also noticed & noted in his review & evaluation: "Some of the injuries do not match the force used on the First UOF (report) and OSI is investigating."

(142) The use of force report number is: UOF# 20-011.

(143) After the 2-10-2020 assault the Plaintiff contacted the Office Of Special Investigations (OSI) & reported the assault & later was interviewed by an Investigator, with no follow-ups or action taken to prevent further assaults.

(144) On February 22ᴺᴰ, 2020 around the morning meal time, LT. McGurr approached the Plaintiffs cell (SHU-253) to inquire into the grievance written on the 2-10-2020 assault.

(145) When Lieutenant McGurr asked the Plaintiff if it was anything he wanted to add, the Plaintiff stated & requested, an order prohibiting officers Elberth & E. Puerschnuer from escorting the Plaintiff, due to threats made by Elberth after the assault. LT. McGurr replied he does not have that authority & the Plaintiff should write DSS Sipple. The Plaintiff agreed to do so.

(146) On February 24ᵀᴴ, 2020 the Plaintiff mailed a formal notice with several requests to Defendant Gary Sipple, asking him to issue a hand held camera order for when the Plaintiff's out of cell movements with escorts & for officers Elberth, Edmund Puerschnuer to be prohibited from escorting the Plaintiff. The Plaintiff also sent the same request to Defendant William Keyser. The Plaintiff also requested to be transferred from the facility.

(147) Defendant Gary Sipple failed to act or respond to the notice

Of the 2-10-2020 assault & threats of being assaulted again.

(148) Defendant Keyser wrote the Plaintiff back & denied the hand held camera order. Deliberately disregarding the Plaintiff's safety.

(149) The Plaintiff appealed the 2-27-2020 Superintendant's hearing to Central office Director of Special Housing, which reviewed & reversed the decision on April 27TH, 2020, with an order for a rehearing.

(150) During the course of the February 14TH through 27TH disciplinary hearing proceedings, the Plaintiff stated on the hearing record that a civil suit had been filed for the assault & battery with the NYS court of Claims & stated the certified mail return reciept requested green card had been returned to the Plaintiff on February 21ST, 2020 confirming service of serving the claim upon the NYS Attorney General Letitia James properly.

(151) Off the hearing record, Defendant Letus asked the Plaintiff who did he name in the suit. The Plaintiff told him: "officer Elberth, officer E. Puerschner, & Sgt. Lisa Wilson, & Nurse Kathleen Buttles. Only the Plaintiff & captain Letus were in the hearing room. The Plaintiff had never told anyone else.

(152) On February 27TH, 2020 during the disciplinary hearing, the Plaintiff addressed the issue of Defendant Steve Hyder being observed on the video footage entering the Plaintiffs cell as the

third officer, behind Defendant Lisa Wilson, wearing a hat & running through the SHU-cross over-door (SHU-Door 3-275-A) into the Plaintiff's cell.

(153) Due to the extreme brutality of the assault, the Plaintiff cannot state how Defendant Ryder participated, but he definately did not stop the attack & he remained in the cell for over three minutes on video.

(154) Off the Hearing Record, the Plaintiff asked Defendant Letus why did he allow (Defendant) Officer Mark Pierschner to falsely testify as being the 3RD officer to come into the cell when the video clearly shows he was the 4TH officer.

(155) Defendant Letus asked the Plaintiff: "Do you know who the 3RD officer is because he is not **named** in any reports". The Plaintiff told Defendant Letus it was Officer Ryder, who is a regularly posted SHU officer at least 3 days per week.

(156) It was only upon reviewing the video footage that the Plaintiff was made aware of officer Steve Ryder being inside the cell.

(157) Defendant Letus stated: "He not named in the reports I'm going by the paperwork." (off the record).

(158) On February 28TH, 2020 around or about 1 p.m., the Plaintiff was informed of a physical therapy call-out by Defendant Elberth.

(159) The Plaintiff was placed in mechanical restraints secured with a waist chain & master lock. All of which was applied by Defendant Elberth.

(160) The Plaintiff exited SHU-cell 253 & was escorted to the Health Services Department by (Defendants) Sgt. Miller, officer Elberth & Officer Ryder. Officer Elberth maintained a tight hold onto the waist chain, causing pain, the entire time.

(161) The Plaintiff was guided to an elevator outside of Health Services Department main entrance. This elevator is not equipped with any surveillance devices.

(162) Upon entering the elevator & the door closing, Defendant Elberth immediately forced me into the right corner wall & began punching the Plaintiff in his back & rib area multiple times repeatedly.

(163) Defendant Elberth then placed the Plaintiff in a head-lock strangle hold & began choking the Plaintiff stopping his ability to breathe.

(164) During his assault Defendant Elberth stated: "So you want to file a law suit on me, you fucking snitch."

(165) Defendant Steve Ryder punched the Plaintiff on the side of his head & body multiple times repeatedly while Defendant Elberth continued to choke the Plaintiff, causing extreme

pain to the head, back & respitory system, making the Plaintiff strain & gasp for air, causing extreme pain & discomfort to the eye balls as well.

166) Once the Plaintiffs legs gave out, Defendant Elberth released the choke hold from the Plaintiff & stated: "Drop the fucking law suit & if you snitch again on me I'm going to make your shitty life in SHU a living Hell." He then punched the Plaintiff in the back twice, stating: "Understand", each time. Causing great pain to the lower & middle back.

167) The Plaintiff looked at Defendant Miller, who was standing near the control panel & door of the elevator. Defendant Miller smiled & smirked at the Plaintiff & stated: "I didn't see nothing & don't forget who has control over your property & everything that goes into your cell."

167) Defendant Miller watched the assault & did nothing to stop it. He actively participated in the attack by not activating the elevator, allowing time for the assault to be carried out & completed. After the assault ended & Miller made his comments, only then did he activate the elevator by pressing a button for the appropriate floor.

168) As the elevator began to move the Plaintiff was lifted upright from his kneeling position by Defendant Elberth,

who stated: "The Captain told us everything." Clearly meaning Captain Letus & the conversations had between the Plaintiff & Defendant Letus, throughout the Tier Hearing proceedings.

169) Defendant Ryder then stated next: "I heard you mentioned the 3ᴿᴰ Officer coming into your cell at the hearing, let it go McFadden."

170) Thereafter the Plaintiff was escorted to meet the physical therapist. Due to the lack of surveillance equipment in the area & Defendants Miller, Elberth, & Ryder standing guard, the Plaintiff did not report the incident to the physical therapist due to fear of further abuse & battery & retaliation.

171) Upon ending the physical therapy session at about 2 p.m., the Plaintiff was then escorted back to the elevator, with Defendants Miller, Elberth & Ryder. Defendant Elberth gripping the Plaintiffs waist chain tightly the entire time.

172) Once in the elevator again, Defendant Elberth drove his elbow & forearm in the Plaintiffs neck area & forced him into the corner, then grabbed a handful of the Plaintiffs genitals & began squeezing the Plaintiffs testicles with great force.

173) Defendant Elberth stated: "I don't like that look in your eyes, are we clear on this or not." While he repeated "are we clear or not" Defendant Elberth twisted the Plaintiffs genitals violently within

his hand, causing immense pain, agony & discomfort throughout the groin area. Defendant Elberth only stopped his assault once the Plaintiff said "we clear" repeatedly, out of pain & fear.

(174) Thereafter Defendant Ryder stated "If my name comes up again, we really gonna play the game." Threatening more retaliation.

(175) Defendant Ryder did not stop the assault, or make any attempt to intervene while Defendant Elberth assaulted the Plaintiff.

(176) Defendant Miller participated in the assault by not activating the elevator, allowing time for the assault to be carried out & completed. Only after the assault ended Defendant Miller activated the elevator by pressing a button for the main floor. Defendant Miller made no attempt to stop the assault.

(177) Thereafter the Plaintiff was escorted back to SHU cell 253.

(178) The Plaintiff filed a grievance on this February 28ᵀᴴ, 2020 assault, which was given grievance No. SUL-0203-20. The Plaintiff appealed Defendant Keysers denial & Defendant Corey Proscia never processed the appeal, conspiraring with Defendant's Keyser, Elberth, E. Puerschner, M. Puerschner, Steve Ryder, Gary Sipple, Lisa Wilson, K. Letus, & Miller, to prevent the Plaintiff from exhausting administrative remedies on both

assault complaints. Defendant Kyser & Proscia intentionally hinderd the Plaintiff's grievances from reaching CORC, as the Plaintiff never got a reply or answer. Defendant Proscia regularly (weekly) told the Plaintiff his appeals & grievances were being processed but covid-19 has IGRC backed up.

179) The Plaintiff wrote Defendant Proscia on 4/3/20 & again on 4/16/20 to inquire about grievances & the lack of responses. On 4/22/20 Defendant Proscia replied:" See Attached Exhibit".

180) On 5/26/20 the Plaintiff wrote Defendant Proscia again about grievance concerns & lack of responses. On 5/27/20 Defendant Proscia replied:" See Attached Exhibit".

181) Defendant Proscia mishandled grievances, consolidated grievances improperly & hinderd appeals intentionally to further impede & hinder the Plaintiff's litigation efforts, as the Plaintiff made Defendant Proscia & Kyser aware of his intentions to file a Federal civil suit about being assaulted twice & food violations.

182) In April 2020, Plaintiff was a practicing Muslim who observed Ramadan regularly (yearly), which is the holy month of fasting.

183) During Ramadan, observant Muslims fast from sunrise to sunset daily.

(184) While Plaintiff was incarcerated at Sullivan Correctional Facility, he observed Ramadon from April 23RD, 2020 to May 23RD, 2020. During the Month of Ramadon, Plaintiff was entitled to be served his meals after sunset.

(185) Prior to the start of Ramadon, Plaintiff contacted the head chaplain Defendant Ogbonna Stanislaus via a written letter, notifying him of his food allergies & requesting preparations be made so Plaintiff could safely participate in the religious fast.

(186) Defendant Stanislaus did not respond to Plaintiff's written communication, despite being reminded of this matter verbally several times when he made SHU rounds.

(187) Prior to the start of Ramadon, in or around February 2020, Plaintiff also contacted Food Services Administrator Defendant Anthony Rizzuto via a written communication, notifying him of his food allergies & requesting preparations be made so Plaintiff could safely participate in the religious fast.

(188) Defendant Rizzuto did not respond to Plaintiffs written communications, despite being reminded of this matter verbally several times when he made SHU rounds.

(189) However, during the entire month of Ramadon Defendants Anthony Rizzuto, Ogbonna Stanislaus, John Papavasiliou, Anthony

Carminati, Timothy Doelnich, Officer Kinne, Mark Puerschner, Kevin Stauch, Ryan Southard, Paul Holland, Steve Ryder, George Gilmour, & William Elberth, provided Plaintiff with religious meals that contained the Allergens (wheat, Peanut Butter, & Bananas) in violation of his medical Diet Order, & being aware of his allergies.

(190) Specifically, Plaintiff was provided the following Allergens during the month of Ramadan: (Allergens Served Daily)

(4-23-2020) 6 Slices of Wheat Bread, 2 Packs of Peanut Butter, 2 bowls of cornflakes cereal.

(4-24-2020) 6 Slices of Wheat Bread, 2 Packs of Peanut Butter, 2 Cornflakes.

(4-25-2020) 6 Slices of Wheat Bread, 2 Packs of Peanut Butter, & 2 Bran Flakes.

(4-26-2020) 10 Slices Of Wheat Bread, 2 Grilled Cheese Sandwiches, 1 Ginger cake, 2 bowls of Bran Flakes, 2 Packs of Peanut Butter.

(4-27-2020) 6 Slices of Wheat Bread, 2 Beef Patties, 2 Packs of Peanut Butter, 2 Bran Flakes.

(4-28-2020) 6 Slices of Wheat Bread, 3 Breaded Fish, 2 Packs of Peanut Butter, 2 Bowls of Bran Flakes.

(4-29-2020) 6 Slices of Wheat Bread, 2 Packs of Peanut Butter, 2 Bran Flakes.

(4-30-2020) 6 Slices Of Wheat Bread, 2 Breaded Chicken Patties, 1 cake, 2 Packs of Peanut Butter, 2 Bowls of Bran Flakes cereal.

(5-1-2020) 6 Slices of Wheat Bread, 2 Grilled Cheese Sandwiches, Macaroni Salad, Banana, 2 Packs of Peanut Butter

(5-2-2020) 6 Slices of Wheat Bread, 2 Beef Patties, Brownie, 2 Pack of Peanut Butter.

(5-3-2020) 6 Slices of Wheat Bread, 2 Pizzas, mac salad, 2 Packs of Peanut Butter, 2 Bran Flakes, 1 apple crisp.



(5-4-2020) 6 Slices of wheat Bread, 2 Packs of Peanut Butter, 2 Bran Flakes.

(5-5-2020) 6 Slices of wheat Bread, 1 cake, 2 Packs of Peanut Butter, 2 Bran Flakes.

(5-6-2020) 6 Slices of wheat Bread, 2 Pizza, 2 Packs of Peanut Butter, 2 corn Flakes cereal, 1 coffee cake.

(5-7-2020) 6 Slices of wheat Bread, 2 Beef Patties, 2 cookies, 2 Packs of Peanut Butter.

(5-8-2020) 6 Slices of wheat Bread, 2 Breaded chicken Patties, 1 cake, 1 banana, 2 Packs of Peanut Butter.

(5-9-2020) 6 Slices of wheat Bread, 2 Breaded Fish, Pasta, apple crisp, 2 Packs of Peanut Butter, 2 Bran Flakes.

(5-10-2020) 6 Slices of wheat Bread, 2 Grilled Cheese Sandwiches, Pasta, 2 Packs of Peanut Butter.

(5-11-2020) 6 Slices of wheat Bread, 2 Beef Patties, 2 Packs of Peanut Butter, 2 Corn Flakes.

(5-12-2020) 6 Slices of wheat Bread, 2 Breaded Halal Patties, 1 cake, 2 Bran Flakes.

(5-13-2020) 6 Slices of wheat Bread, 2 Breaded Fish, 1 coffee cake, 2 Bran Flakes.

(5-14-2020) 6 Slices of Bread, 2 Breaded Halal Patties, 2 Bran Flakes.

(5-15-2020) 6 Slices of wheat Bread, 2 Pizzas, 2 Bran Flakes, 1 apple crisp.

(5-16-2020) 6 Slices of wheat Bread, 2 Breaded Halal Patties, 2 Bran Flakes.

(5-17-2020) 10 Slices of wheat Bread, 2 Breaded Fish, 2 Bran Flakes.

(5-18-2020) 24 Slices of wheat Bread, 2 Grilled Cheese Sandwiches, 1 cake, 2 Packs of Peanut Butter.

(5-19-2020) 6 Slices of Bread, 1 cake

(5-20-2020) 6 Slices of wheat Bread, 2 Breaded Halal Patties, Banana, 2 Bran Flakes.

(5-21-2020) 6 Slices of wheat Bread, Pasta, 2 Breaded Halal Patties, cookies (2,

2 Corn Flakes.
(5-22-2022) 6 Slices of wheat bread, 2 Grilled Cheese Sandwiches, mac salad.
(5-23-2020) 3 Pizzas
(5-24-2020) 4 Slices of wheat bread, mac & cheese, 1 cake, 1 bean pie.

191) Defendants Doernck, Kinne, M. Puerschner, Stauch, Southard, Holland, Ryder, Elberth, & Gilmour served Plaintiff his meals during the month of Ramadan. As their regular SHU feed-up officers & knew the Plaintiffs allergies from prior advisement of the Plaintiff & prior food problems in 2019.

192) At almost every meal during Ramadan, Plaintiff asked Defendants Doernck, Kinne, M. Puerschner, Stauch, Southard, Holland, Ryder, Elberth, & Gilmour to contact the mess hall regarding his dietary restrictions but they refused. All defendants informed Plaintiff that they could not mix religious meals with special diet meals.

193) As a result, Plaintiff filed a grievance with Defendant Proscia, over the fact he was consistently being served Allergens in violation of his Diet Order.

194) Defendant Proscia informed Plaintiff they would not mix religious meals with special diet meals. The Plaintiff appealed.

195) The grievance was denied & the plaintiff did not receive his special diet meals during Ramadan for the fast.

196) Plaintiff was therefore forced to choose between practicing his religion or protecting his health.

197) In order to protect his health and practice his religion, On May 12, 2020, Plaintiff changed his religion with the facility to the Nation of Islam, because that religion's dietary restrictions excluded Peanut Butter & Soy, which replaced Beef Patties & Peanut Butter with other foods the Plaintiff could safely eat.

198) But for the fact that the Defendants Keyser, Stanislaus, Rizzuto, Papavasiliou, Carminati, Proscia, Doenick, Kinne, Mark Puerschner, Stauch, Southard, Holland, Ryder, Elberth, & Gilmour, refused to accommodate Plaintiff's special diet, the Plaintiff would not have changed his religion to the Nation Of Islam.

199) Not only was Plaintiff unable to freely exercise his religion but Plaintiff also suffered severe physical harm including extreme & unhealthy weight loss, due to the Defendants (listed at 198) serving him food containing or cross contaminated with the Allergens in violation of his Diet order.

200) Throughout his time at Sullivan Correctional Facility, Plaintiff filed several grievances concerning the fact that he was being served Allergens in violation of his Diet Order.

201) Defendants Proscia & Keyser denied those grievances & appeals.

(202) Defendant Keyser appointed (Defendant) DHO Morrow to conduct the Re-Hearing of the 2-10-2020 misbehavior report, fabricated by Defendant Elberth.

(203) Defendant Morrow conspired with Defendant Keyser to preclude testimony about the lack of audio attached to the video footage & prohibit the technician from being called as a witness for the ReHearing.

(204) The Superintendents ReHearing concluded on May 12TH, 2020 with Defendant Morrow violating the Plaintiff's due process right to call the technician as a witness.

(205) Defendant Morrow also violated the Plaintiff's due process rights in several other respects, at the authority of Defendant Keyser.

(206) The law is clear that Doccs is forbidden to administratively rehear disciplinary charges that were dismissed upon initial hearing (Matter of Scott v. Prack, 117 AD3d 1300, 1301 (3d Dept 2014). Defendant Keyser & Morrow subjected the Plaintiff to rehearing on the weapons and movement violation charges, which Defendant Letus had rendered a determination of not guilty on those charges at the February 27TH, 2020 hearing. Particularly because the record lacked substaintabal evidence to support the charges & the record establishes that the waist chain could not be considred

as a weapon & the facts in evidence were insufficient to make out a movement violation.

(207) Defendant Morrow found the Plaintiff guilty of all charges & Defendant Keyser approved her unlawful sanction, as part of Defendant Keyser's conspiracy to cover-up the assault & illegal use of force, & to coincide with his fabricated report of 3-12-2020 (detailed at point one-thirty-nine of this complaint).

(208) DOCCS regulations make clear that "whenever a new hearing is ordered (on administrative appeal) the penalty imposed at the new hearing may not exceed the penalty imposed at the original hearing" (7 NYCRR 254.8(d)). A finding of guilt on the weapon & movement violation charges on rehearing, given the prior not guilty determination is a greater penalty than that imposed at the original hearing. The extent to which is a matter of context & purpose.

(209) While Defendant Morrow imposed the same length of SHU sanction as Captain Letus did, a conviction is itself a penalty. The fact of conviction carries with it a permanent blemish on a disciplinary record. That blemish causes a variety of collateral consequences.

(210) First, the conviction may be an aggravating factor in penalty imposition at any future disciplinary proceeding (see 7 NYCRR

254.7: DOCCS Confinement Sanction Guidlines). Likewise, a disciplinary conviction will negatively impact an individual who appears before the parole board or time allowance committee (9 NYCRR 8002.2(d) & 7NYCRR 2603).

(211) The Plaintiff was also deprived the due process right of attending the hearing. Plaintiff made an initial appearance.

(212) After it was falsely reported that the Plaintiff waived his right to be present, Defendant Morrow did not ascertain this fact through her own confirmation with the Plaintiff.

(213) Defendant Morrow conducted the remainder of the hearing without the Plaintiff, pausing several times for adjournments. Each continuation of the hearing record begins with Defendant Morrow falsely stating the Plaintiff continues to refuse to participate in the hearing & attend. Never once did Defendant Morrow go to the Plaintiffs cell to inquire personally.

(214) The Plaintiffs inmate witnesses were called to the hearing by Defendant Morrow, who all told her on record that the Plaintiff was assaulted & jumped by the officers.

(215) Once the Plaintiff realized these inmates were going

to his hearing & he was being excluded, the Plaintiff told the inmate witnesses to tell Defendant Morrow he wanted to attend the hearing. Each inmate returned from the hearing saying they relayed the request & message. Defendant Morrow continued as she wanted & was instructed by Defendant Keyser.

216) The Plaintiff filed an administrative appeal to central office with the Director of Special Housing, with Prisoners Legal Services help again, & on July 20, 2020 the matter was reversed and expunged.

217) In or around June 10, 2020 Plaintiff was transferred to Southport Correctional Facility.

(~~continued~~) First Claim — (Violation Of The 8TH Amendment) — Against All Defendants In Their Individual Capacities —

218) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

219) Plaintiff's allergies to the Allergens are serious medical needs as diagnosed by his physicians & documented by Plaintiff's Diet Order.

220) At all times relevant to this complaint, the Defendants were aware of Plaintiff's dietary restrictions & that his ingestion

of the Allergens would cause him severe bodily harm.

221) Defendants were also aware that if Plaintiff did not consume food, he would suffer severe bodily harm in that he would lose weight.

222) Defendants refused to carry out or ignored Plaintiff's Diet Order & insisted Plaintiff consume the harmful Allergens.

223) The Defendant's misconduct caused Plaintiff immediate & ongoing injuries, including severe weight loss, severe bodily pain, & suffering, mental anguish, & emotional distress.

224) In addition, Defendants were aware of the need to implement more or better policies, training, & supervision with regard to the meal service at Sullivan Correctional Facility but failed to take adequate corrective or preventative measures.

225) The Defendant's failure to implement adequate policies, training, & supervision regarding inmate's dietary restrictions, & failure to adequately investigate or discipline the violation of inmate's dietary restrictions gave Defendants a sense they could ignore inmates basic medical needs with impunity.

226) All Defendants acting in their individual capacities ignored or were deliberately indifferent to Plaintiff's serious medical needs amounting to cruel & unusual punishment in violation

of Plaintiffs rights under the Eighth Amendment.

227) The Defendants acted maliciously, with evil intent, & callous indifference to Plaintiffs federally protected rights, warranting an award of Punitive damages.

— Second Claim — (violation of Eighth Amendment)

228) Plaintiff restates the allegations contained in each & every paragraph in their entirety as if set forth in full.

229) By their actions, inactions, & means chosen to confront the Plaintiff, Defendants Elberth, E.Puerschner, M.Puerschner, Ryder, & Wilson acted with willful disregard for Plaintiffs safety & used their authority to create a dangerous situation making Plaintiff more vulnerable to harm than was reasonable under the circumstances.

230) Plaintiffs injuries were foreseeable & a direct results of the danger created by the Defendants & the manner in which Defendants confronted & physically beat on the Plaintiffs head, face, & body with punches & kicks, & twisting his limbs to inflict pain.

231) By their actions taken under the color of law, the Defendants intentionally, & willfully deprived Plaintiff of clearly established constitutional rights to be free from assault, bodily injury,

excessive uses of force, & cruel & unusual punishment as guaranteed by the Eighth Amendment. (Both Assaults)

(232) That on February 10TH, 2020 the Defendants acting under the color of law committed the crime of assault & battery by punching & kicking the Plaintiff while he was handcuffed to a waist restraint chain & non-combative, knocking him to the ground & beating him & twisting his limbs.

(233) At all times relevant to February 10TH, 2020, the Defendants went afoul of acting within the course & scope of their duties as employees performing their duties to effectuate a legitimate action & violated Doccs statutory regulations at 7 NYCRR 251-1.2(a)(c)(d), 9 NYCRR 7651.26(a)(1)(b), 9 NYCRR 7651.16(a)(f)(G), Correction Law 137(5)(b)(b), 9 NYCRR 7651.11(b).

(234) As a direct & proximate results of the above-described illegal actions, the Plaintiff sustained physical injury to the head, face, teeth, mouth, body, & legs. Mental anguish, pain & suffering. Which was the sole intent of the Defendants on February 10TH, 2020.

(235) The actions of Defendants Elberth, E. Puerschner, M. Puerschner, S. Ryder, & L. Wilson in using physical force against Plaintiff without need or provocation, or in failing

to intervene to prevent the misuse of force, were done with evil intent, maliciously & sadistically & constituted cruel & unusual punishment in violation of the Eighth Amendment.

236) The actions of Defendants Elberth, E. Puerschner, Ryder, & M. Puerschner in using physical force against the Plaintiff without need or provocation constituted the tort of assault & battery under the law of New York state. (Both Assaults)

## — THIRD CLAIM — (DELIBERATE INDIFFERENCE)

237) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

238) The failure of Defendants Keyser & Sipple, to take disciplinary or other action to curb the known pattern of physical abuse of inmates by Defendant Elberth, constituted deliberate indifference to the Plaintiff's safety & contributed to & proximately caused the above-described violation of Eighth Amendment rights & two assaults & battery incidents. Defendants Wilson & Miller actually watched the assaults.

239) The failure of Defendant Kathleen Buttles to provide medical care for Plaintiff's split lips, broken tooth, gashes on the head, sprain ankle, & provide for follow-up exams & dental care constituted deliberate indifference to the Plaintiff's serious medical needs in violation of the

Eighth Amendment to the United States Constitution.

(240) The failure of Kathleen Buttles to ensure the Plaintiffs sick call slip requesting exams & treatment for pain & a broken tooth after the 2-10-2020 assault, filed on 2-10-2020 constitute deliberate indifference to Plaintiff's serious medical needs. Plaintiff gave the sick call slip to Buttles personally.

— FOURTH CLAIM — (Retaliation)

(241) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

(242) After learning the Plaintiff filed a law suit on the 2-10-2020 attack, through Defendant Letus, Defendants Elberth & Ryder assaulted the Plaintiff again on February 28TH, 2020 & told the Plaintiff to drop the lawsuit.

(243) After learning the Plaintiff identified officer Ryder on video entering his cell during the February 10TH, 2020 assault through Defendant Letus, Defendant Ryder assaulted the Plaintiff on February 28TH, 2020 telling the Plaintiff to stop mentioning his name & let it go.

(244) The Defendants assaulted the Plaintiff on 2-28-2020 for taking actions legal under the 1ST Amendment & to coerce the Plaintiff to abandon seeking lawful recourse.

(245) Defendants acted maliciously, with evil intent under the color of law to deprive the Plaintiff of clearly established constitutional rights to petition the Government for redress of grievances. As guaranteed by the First Amendment.

(246) By their actions taken under the color of law, the Defendants intentionally & willfully deprived Plaintiff of clearly established constitutional rights to be free from assaults, bodily injury, & cruel & unusual punishment as guaranteed by the Eighth Amendment.

(247) By their actions taken under the color of law, the Defendants intentionally & willfully deprived Plaintiff of clearly established constitutional rights to the equal protection of the laws as guaranteed by the Fourteenth Amendment.

## —FIFTH CLAIM— (Failure To Protect)

(248) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

(249) The failures of Defendants to take actions to prevent, intervene, or stop the assaults while they were being committed constitutes a failure to protect. By their actions & deliberate inactions taken under the color of law, the Defendants intentionally & willfully deprived Plaintiff of clearly established constitutional rights to be free from assault, retaliation,

& cruel & unusual punishments, & the right to equal protections of the laws as guaranteed by the Eighth & Fourteenth Amendments.

— SIXTH CLAIM — (Due Process)(Due Process Clause)

(250) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

(251) The actions of Defendant Letus in refusing to call the witnesses requested by the Plaintiff, fabricating facts on record, finding the Plaintiff guilty of a fabricated misbehavior report with no evidence to support the charges, being bias, crediting undisputable false testimony contradicted by video footage, & providing an inadequate written disposition of the charges & reasons for refusing witnesses, & Defendant Keyser in upholding the disciplinary decision, denied the Plaintiff due process of law in violation of the Fifth & Fourteenth Amendments to the U.S. Constitution.

(252) The actions of Defendant Morrow in refusing to call the technician requested by the Plaintiff, unlawfully subjecting the Plaintiff to rehearing on the weapon & movement regulation charges that were dismissed upon initial hearing & finding him guilty of those charges with no evidence to support the charges or fabricated misbehavior report, crediting undisputable false testimony contradicted by video footage, holding the hearing without the Plaintiff, & providing an inadequate disposition of

the charges & written reason for not calling witness, & Defendant Keyser in upholding the disciplinary decision, deprived the Plaintiff due process of law in violation of the Fifth & Fourteenth Amendments to the U.S. Constitution.

(253) Plaintiff was deprived of the right to a hearing before an impartial fact-finder and a fair hearing. Defendant's Letus & Morrow both had their minds made & faced external pressures which prevented them from being impartial & fair. Which deprived the Plaintiff due process of law in violation of the Fourteenth Amendment.

(254) Defendants Letus & Morrow displayed their lack of impartiality by their statements, dishonesty, & actions at the hearings & in connection with them.

— Seventh Claim — (False Disciplinary Charges & Reports)

(255) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

(256) Defendant Elberth unlawfully, intentionally, knowingly, & willfully fabricated & wrote the Plaintiff a false disciplinary misbehavior report on 2-10-2020 with false allegations & disciplinary charges to cover up his assault on the Plaintiff. The Plaintiff never assaulted staff.

(257) Defendant Elberth unlawfully, intentionally, knowingly, & willfully fabricated a use of force report to cover up his assault on the Plaintiff on 2-10-2020.

(258) Defendant Edmund Puerschner unlawfully, intentionally, knowingly, & willfully fabricated & filed a false use of force report on the Plaintiff to cover up his assault on the Plaintiff on 2-10-2020.

(259) Defendant Mark Puerschner unlawfully, intentionally, knowingly, & willfully fabricated & filed a false use of force report on the Plaintiff to cover up his assault or failure to stop the assault upon the Plaintiff on 2-10-2020.

(260) Defendant Lisa Wilson unlawfully, intentionally, knowingly, & willfully fabricated & filed a false use of force report on the Plaintiff to cover up the assault & her failure to stop the assault upon the Plaintiff on 2-10-2020.

(261) Defendant Lisa Wilson unlawfully, intentionally, knowingly, & willfully fabricated & filed an internal report with Defendant Keyser to cover up the assault & her failure to stop the assault upon the Plaintiff on 2-10-2020.

(262) Defendant William Keyser unlawfully, intentionally, knowingly, & willfully fabricated & filed a false use of force review & evaluation report on 3-12-2020 to cover up the 2-10-2020 assault.

263) Defendant Kenneth Letus unlawfully, intentionally, knowingly, & willfully fabricated & filed a false disciplinary decision based on testimony he knew to be false & contradicted by video footage he watched prior to making his false & fabricated decision report, to cover up the assault on the Plaintiff on 2-10-2020, rendered & filed 2-27-2020.

264) Defendant DHO Morrow unlawfully, intentionally, knowingly, & willfully fabricated & filed a false disciplinary decision based on false testimony she knew to be untrue & contradicted by video footage she watched & inmate witnesses, prior to making her false & fabricated decision report, to cover up the assault upon the Plaintiff on 2-10-2020, rendered & filed on May 12, 2020.

265) Defendants Elberth, E.Puerschner, Mc.Puerschner, Wilson, Keyser, Letus, & Morrow acted maliciously, with evil intent, & sadistically, knowing their actions would injure the Plaintiff by causing mental anguish, emotional distress, & subject the Plaintiff to cruel & unusual punishment in violation of due process & deprive the Plaintiff of his clearly established constitutional rights as guaranteed to him by the Eighth & Fourteenth Amendments.

—EIGHTH— CLAIM— (42 USC §2000cc-RLUIPA)

266) The foregoing paragraphs are incorporated herein in their

entirety as if set forth in full.

267) The Sullivan Correctional Facility receives federal funding.

268) Plaintiff's observation of Ramadan was rooted in a sincerely held belief that is religious in nature, namely, Plaintiff was a practicing Muslim and Ramadan is the holy month of fasting under the Islamic calendar.

269) Plaintiff's allergies to the Allergens are serious medical needs as diagnosed by his physicians & documented by Plaintiff's Diet Order.

270) The regulations of Sullivan Correctional Facility that religious meals cannot be prepared in consideration of an inmates dietary restrictions does not further a compelling government interest by the least restrictive means.

271) The regulation in fact placed a substantial burden on Plaintiff's religious exercise as he was forced to choose between practicing his religion or eating.

272) The Plaintiff was not provided the special diet meals as a replacement to participate in the fast & only given religious meals containing the Allergens throughout the Holy Month of Ramadan.

273) All Defendants (Stanislaus, Rizzuto, Papavasiliou, Carminati, Doersch, Kinne, McPuerschner, Stauch, Elberth, Southard, Holland, Ryder, Gilmour, Keyser, & Proscia) ignored or were deliberately indifferent to Plaintiff's rights to exercise or practice his religious beliefs, in violation of Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 USC §2000cc.

— NINETH CLAIM — (Violation of the First Amendment)

274) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

275) Plaintiff's allergies to the Allergens are serious medical needs as diagnosed by his physicians & documented by Plaintiff's Diet Order.

276) Plaintiff was a practicing Muslim with sincerely held beliefs.

277) The regulations of Sullivan Correctional Facility that religious meals cannot be prepared in consideration of an inmate's dietary restrictions does not have a valid, rational connection to a legitimate governmental interest nor does it further a compelling government interest.

278) Plaintiff was not able to exercise his observation of Ramadan given this regulation without extremely harmful physical consequences due to his dietary restrictions.

(279) The Defendants refusal to accommodate Plaintiff's dietary restrictions, including his Diet Order, placed a substantial burden on Plaintiff's religious practices.

(280) All Defendants (Keyser, Proscia, Gilmour, hyder, Holland, Southard, Elberth, Stauch, Mohverschner, Kinne, Doeinck, Carminati, Rizzuto, Papavasiliou, Stanislaus) acting in their individual capacities ignored or were deliberately indifferent to Plaintiff's right to exercise or practice his religious beliefs, in violation of Plaintiff's rights under the First Amendment.

   —TENTH CLAIM— (Declaratory Judgment Against All Defendants)

(281) The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

(282) There is a genuine case or controversy Defendants disobedience of Plaintiff's Diet Order & refusal to protect Plaintiff from the Allergens that can seriously harm him.

(283) Defendants have ignored Plaintiff's medically documented allergies to the Allergens, forcing him to choose between eating food that can hurt him or going hungry.

(284) At times, Plaintiff was forced to choose between practicing his religion & eating, as described above, due to Defendants refusal to obey Plaintiff's Diet Order.

285) The physical abuse of the Plaintiff by Defendants Elberth, E. Puerschner, Ryder & M. Puerschner violated the Plaintiff's rights under the Eighth Amendment & constituted an assault & battery under state law.

286) The actions of Defendants Wilson, Miller, Ryder, & M. Puerschner in failing to intervene to prevent the assaults & misuses of force, were done maliciously & sadistically and constituted cruel & unusual punishment in violation of the Eighth Amendment.

287) Defendants Keyser & Sipple's failure to take action to curb the abuse & prevent the physical abuse of prisoners (Plaintiff) violated the Plaintiff's rights under the Eighth Amendment & constituted deliberate indifference & an assault and battery under state law.

288) Defendants Letus & Morrow's actions in conducting the Plaintiff's disciplinary hearings & Defendant Keyser's actions in sustaining both, violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

289) Defendants Keyser, Letus, Morrow, Elberth, E. Puerschner, M. Puerschner, & Wilson, false reports & fabricated reports violated the Plaintiff's rights under the Eighth Amendment & constituted cruel & unusual punishment.

290) Defendant Buttles actions in failing to provide medical care & refferals for follow up care for the Plaintiff violated the

Plaintiff's rights under the Eighth Amendment.

(291) Defendants Elberth & Ryder physical abuse of the Plaintiff & threats violated the Plaintiff's rights under the First Amendment & Eighth Amendment & constituted assault & battery and retaliation for petitioning the court.

(292) Accordingly, Plaintiff is entitled to a judgment declaring that Defendants actions & omissions as stated above violated Plaintiff's rights as gauranteed by the First, Fifth, Eighth, & Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the RLUIPA 42 U.S.C. § 2000cc.

— JURY TRIAL —

(293) Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues triable of right by jury.

— RELIEF REQUESTED —

WHEREFORE, Plaintiff demands judgment against defendants:

(A) Declaring that Defendants actions & omissions as stated above violated Plaintiff's rights gauranteed by the First, Fifth, Eighth, & Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the RLUIPA 42 U.S.C. § 2000cc.

(B) Awarding compensatory damages in the following amounts:

(1) $100,000.00 (One-Hundred-Thousand-Dollars) jointly & severally against Defendants Keyser, Sipple, Wilson, Miller, Elberth, Ryder, E.Puerschner, & M.Puerschner for the physical & emotional injuries resulting & sustained as a result of the Plaintiff's beatings.

(2) $50,000.00 (Fifty-Thousand-Dollars) jointly & severally against ~~Defendant~~ Defendants Keyser, Rizzuto, Papavasiliou, Carminnati, Proscia, Stanislaus, Elberth, M.Puerschner, Doeinck, Kinne, Southard, Holland, Ryder, & Gilmour, for the physical & emotional injuries resulting & sustained from the Defendants disobedience of Plaintiff's Diet Order & refusal to protect Plaintiff from the Allergens that can seriously harm him. Forcing Plaintiff to choose between eating food that can hurt him or going hungry, & forcing Plaintiff to choose between practicing his religion & eating & placing a substantial burden on his ability to observe Ramadan.

(3) $20,000.00 (Twenty-Thousand-Dollars) jointly & severally against Defendants Keyser, Letus, Morrow, Wilson, Elberth, Edmund Puerschner, & Mark Puerschner, for the fabricated & false reports, testimony, collusion, & punishment, including deprivation of amenity, & for emotional & mental injuries resulting from their false & fabricated reports & testimony & denial of due process in connection with the Plaintiff's disciplinary proceedings.

(4) $50,000.00 (Fifty-Thousand-Dollars) against Defendant Buttles

jointly & severally for the physical, mental, & emotional injuries sustained & resulting from her collusion & callousness & failure to provide medical care to the Plaintiff.

**C** Award punitive damages in the following amounts:

① $25,000.⁰⁰ (Twenty-Five-Thousand-Dollars) each against Defendants Elberth, E. Puerschner, M. Puerschner, Ryder, Wilson & Miller.

② $20,000.⁰⁰ (Twenty-Thousand-Dollars) each against Defendants Keyser, Sipple, Letus, Morrow, & Proscia, & Buttles.

③ $15,000.⁰⁰ (Fifteen-Thousand) each against Defendants Pizzuto, Papavasiliou, Carminati, Stainislaus, Doeinck, Kinne, Southard, Holland, & Gilmour.

D Awarding Plaintiff the cost of this litigation & reasonable attorney's fees & expenses upon the appointment of counsel pursuant to 42 U.S.C. § 1983 & § 1988.

E Awarding such other & further relief as the Court deems just & proper.

Dated: 1-16-2023

Robert McFadden #14-B-3670
Robert McFadden, Pro-Se
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _January 16TH 2023_
                    (date)

**NOTE:** *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

_Melvet McFadden #1463670, Pro-Se_

_Robert McFadden #1463670, Pro-Se_

_____

                    Signature(s) of Plaintiff(s)

7



**Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

TO: McFadden 14B3670 SHU-253

FROM: C. Proscia, Supv IGRC

SUBJECT: Letter Dated 5/26/20

DATE: 5/27/20

Grievance updates:

SUL-0013-20 – Heard by IGRC on 1/6/20, no appeal received
SUL-0111-20 – You appealed to CORC
SUL-0127-20 – Pending Investigation
SUL-0120-20 – You appealed to CORC
SUL-0155-20 – Pending Investigation
SUL-0166-20 – You appealed to CORC
SUL-0195-20 – Heard by IGRC on 3/25, no appeal received
SUL-0201-20 – Heard by IGRC 4/1, no appeal received
SUL-0203-20 – Answered by Supt 3/26, no appeal received
SUL-0223-20 – Pending Investigation

All grievances received by this office are filed in accordance with Directive #4040. This office has not received any grievances from you since 3/17/20. As a courtesy, I have included your grievance list. Any future requests for a grievance list will have to be done via the FOIL mechanism. However, you may request updates on grievances in writing; be sure you include grievance numbers when requesting any updates.



## Corrections and Community Supervision

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

TO: McFadden, R 14 B3670 SHU 253

FROM: C. Proscia, Supervisor IGRC

SUBJECT: Correspondence

DATE: 4/22/20

_____

This office is in receipt of your correspondences dated 4/16/20 and 4/3/20. Be advised, due to the COVID-19 pandemic and I am only in the facility one day a week, therefore answering correspondence may be delayed. All grievances received by this office are filed in accordance with Dir. #4040. You may utilize the FOIL mechanism set forth in Directive #2010 to obtain a copy of your grievance overview sheet. Please be patient with the filing of grievances and responses.

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. SUL-0203-20 | | DATE FILED 3/16/20 |
|---|---|---|---|
| | FACILITY Sullivan CF | | POLICY DESIGNATION I |
| **INMATE GRIEVANCE PROGRAM** | TITLE OF GRIEVANCE Alleged Assault | | CLASS CODE 49 |
| **SUPERINTENDENT** | SUPERINTENDENT'S SIGNATURE | | DATE 3/26/20 |
| GRIEVANT McFadden, R | DIN 14B3670 | | HOUSING UNIT SHU-253 |

Grievance SUL-0203-20 has been investigated by security supervisory staff at this facility. Investigation reveals allegations made by grievant against staff to be meritless and unfounded. Staff mentioned in complaint have gone on written record denying any type of unprofessional conduct towards the grievant.

Based on the above, this grievance is denied.

---

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. * Please state why you are appealing this decision to C.O.R.C.

This is a cover up. I was assaulted on 2-10-20 & asked for a hand camera order & for Elberth to be kept away from me. I wrote Keyser & D.S.S Sipple both & they ignored my safety concerns which allowed this 2nd assault.

Robert McFadden #14B3670                    3-30-2020

GRIEVANT'S SIGNATURE                    DATE

GRIEVANCE CLERK'S SIGNATURE                    DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)

Form 2133 (02/15)

My Copy

| NEW YORK STATE **Corrections and Community Supervision** | GRIEVANCE NO. SUL-0122-20 | | DATE FILED 2/11/20 |
|---|---|---|---|
| | FACILITY Sullivan CF | | POLICY DESIGNATION I |
| **INMATE  GRIEVANCE  PROGRAM** **SUPERINTENDENT** | TITLE OF GRIEVANCE Meal Issues/Ramadan Meals | | CLASS CODE 37 |
| | SUPERINTENDENT'S SIGNATURE | | DATE 8/3/20 |
| GRIEVANT McFadden, R | DIN 14B3670 | | HOUSING UNIT SHU-253 |

Grievance SUL-0122-20 has been investigated by supervisory staff at this facility. Investigation reveals that the grievant has been receiving the appropriate meals based on his dietary needs. It is noted that per the Office of Nutritional Services a gluten-free Ramadan combination is not available at this time.

Based on the above, this grievance is denied.

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. * Please state why you are appealing this decision to C.O.R.C.

Copy

3-4-20

| | |
|---|---|
| GRIEVANT'S SIGNATURE | DATE |
| GRIEVANCE CLERK'S SIGNATURE | DATE |

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

Robert McFadden #14B3670
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

January 16TH, 2023

Re: Robert McFadden v. William Keyser, et al.   (SDNY)

Dear U.S. District Clerk of The Court,

Enclosed herewith for filing in the above captioned matter are an original complaint with an original signature, a completed application to proceed informa pauperis with a signed Authorization form, a completed civil cover sheet, and proof of grievances (exhibits).

Please advise if anything further is required. Thank you.

Respectfully Submitted,
Robert McFadden, Pro-Se
Robert McFadden #14-B-3670
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

Robert McFadden #14B3670
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

Mid - State

Correctional Facility

neopost
01/24/2023
US POSTAGE $004.08⁰

ZIP 13403
041L11251108






PRO SE OFFICE

RECEIVED
JAN 30 2023

U.S. District Court
Southern District Of New York
U.S. Courthouse, (Clerks Office)
500 Pearl Street
New York, New York 10007-1312



RECEIVED
JAN 27 2023
CLERK'S OFFICE
S.D.N.Y.

Pro Se

AF

USM
SDNY

Legal Mail