USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT MCFADDEN,

                  Plaintiff,

-against-

SUPERINTENDENT WILLIAM KEYSER, et. al.,

                  Defendants.

23-cv-802 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    *Pro se* Plaintiff Robert McFadden ("Plaintiff") initiated this action on January 27, 2023, alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming violations of the First Amendment, Eighth Amendment and Fourteenth Amendment, as well as bringing forth claims for failure to protect, violations of the Religious Land Use and Institutionalized Persons Act and for declaratory judgment, against Defendants William Keyser ("Keyser"), Christopher Kinne ("Kinne"), Paul Holland ("Holland"), Ryan Southard ("Southard"), Timothy Doeinck ("Doeinck"), Ronald Miller ("Miller"), Lisa Wilson ("Wilson"), Corey Proscia ("Proscia"), Anthony Carminati ("Carminati"), Garry Sipple ("Sipple"), George Gilmour ("Gilmour"), Kathleen Buttles ("Buttles"), John Papavasilou ("Papavasilou"), Edmund Puerschner ("E. Puerschner"), Mark Puerschner ("M. Puerschner"), Virginia Morrow ("Morrow"), Anthony Rizzuto ("Rizzuto"), William Elberth ("Elberth"), Steven Ryder ("Ryder"), Kenneth Letus ("Letus") and Stanislaus Ogbonna ("Ogbonna") (collectively, "Defendants").

    Presently before are Defendants' Motion to Dismiss Plaintiff's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, the motion is GRANTED in part and DENIED in part.

1

**BACKGROUND**

The following facts are derived from the Complaint ("Compl.") and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff is an inmate at Mid-State Correctional Facility. (Compl. ¶ 4.) Plaintiff alleges that between October 2019 and June 2020, Defendants failed to provide him a special diet that accommodated his allergies, causing him, among other symptoms, stomach aches, skin rashes, vertigo and vomiting at times. (*Id*. ¶¶ 28-30.)

Plaintiff asserts that on February 10, 2020, an altercation occurred between the Plaintiff and several of the Defendants. (*Id*. ¶ 45.) Plaintiff states that Elbert and E. Puerschner attacked Plaintiff in his cell, striking him with closed fist punches to his head, face, nose, mouth and body. (*Id*. ¶ 64.) Wilson allegedly stood by, witnessing the assault, but took no action. (*Id*. ¶ 69.) Similarly, M. Puerschner began to attack the Plaintiff, and the other witnessing Defendants did not intervene to prevent the assault. (*Id*. ¶ 71.) Plaintiff pleads that this assault was in retaliation for Plaintiff filing a previous lawsuit against the Defendants. (*Id*. ¶¶ 161-169, 172-176.) Plaintiff states that the Defendants, specifically Elberth, M. Puerschner, E. Puerschner, and Wilson conjured up fabricated reports and narratives to cover up their February 10, 2020 assault on Plaintiff. (*Id*.)

Subsequent to the assault, an initial Tier III hearing was conducted on February 27, 2020, the outcome of which found the Plaintiff guilty of weapons and movement violation charges. (*Id*. ¶¶ 206-207.) Defendants acknowledge that at the Tier III hearing Plaintiff was denied the right to call witnesses, to attend the hearing, and to receive a written summation of the hearing ruling. (Mot. p. 17.) As a consequence of being found guilty of the charges levied against him, Plaintiff was sentenced to serve 180 days in the segregated housing unit, which he ultimately did not serve as the February 27, 2020 Tier III hearing's conclusions were overturned at a subsequent hearing

on April 27, 2020. (Compl. ¶¶ 116, 149.) However, Plaintiff did experience punishment prior to the April 27, 2020 reversal decision, in the form of a loss of privileges occurring as a result of a diminution in his Progressive Inmate Movement Status, namely "phone calls weekly to family, static tablet time, access to personal property, phone calls to [his] formerly incarcerated wife . . . and the blemish on Plaintiff['s] record." (Opp. ¶ 67.)

Plaintiff also states that he suffered injuries in the form of a chipped tooth, nose pain, busted lip, split gums, back pain, left knee and foot pain, neck pain and wrist pain. (Compl. ¶ 76.) Plaintiff alleges that Defendant Buttles was deliberately indifferent to such medical conditions and denied Plaintiff's requests to receive appropriate medical treatment. (*Id*. ¶ 80.)

Finally, Plaintiff offers cursory allegations which charge, generally, that the Defendants violated his religious rights by their "refusal to accommodate Plaintiff's dietary restrictions, including his diet order, [which thereby] placed a substantial burden on Plaintiff's religious practices." (*Id*. ¶ 279.)

Based on the foregoing, Plaintiff brings Section 1983 claims alleging violations of the First Amendment, Eighth Amendment and Fourteenth Amendment, as well as claims for failure to protect, violation of the Religious Land Use and Institutionalized Persons Act and Plaintiff also seeks declaratory relief.

**PROCEDURAL HISTORY**

On January 27, 2023, Plaintiff commenced this action against the Defendants in his Complaint. (ECF No. 1). On July 18, 2024, Defendants filed their motion to dismiss and memorandum of law in support ("Mot.") (ECF No. 71.) Plaintiff filed his opposition to Defendants' motion to dismiss ("Opp.") (ECF No. 72). Defendants filed their reply in support of their motion to dismiss ("Reply") (ECF No. 72).

**LEGAL STANDARD**

A. **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B. **Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

4

any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Quinn v. Nassau Cty. Police Dep't, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

C. *Pro Se* **Pleading Standard**

Where a litigant is *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider "new claims appearing for the first time in the briefing 'if the claims could have been asserted based on the facts alleged in the complaint." *Vlad-Berindan v. MTA New York City Transit*, No. 14-cv-675, 2014 WL 6982929, at *5 (S.D.N.Y.2014) (citing *Rosado v. Herard*, No. 12-cv-8943, 2013 WL 6170631, at *3 (S.D.N.Y. 2013). Courts are to read

a *pro se* litigant's papers "liberally" and "interpret them to raise the strongest argument that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994).

### D. Impermissible Group Pleading

While Federal Rule of Civil Procedure 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.,* 296 F.2d 847, 851 (2d Cir.1961)). Where a plaintiff "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . [t]he complaint fail[s] to satisfy this minimum standard" and dismissal of each claim, if not the entire complaint, is appropriate. *Id*.

## DISCUSSION

Plaintiff brings claims pursuant to Section 1983, alleging violations of the First Amendment, Eighth Amendment and Fourteenth Amendment, as well as claims for failure to protect, violations of the Religious Land Use and Institutionalized Persons Act and seeks declaratory judgment. The Court addresses them in turn.

### A. First Claim – Eighth Amendment Deliberate Indifference Claim

In order to state an Eighth Amendment deliberate indifference claim, a plaintiff must satisfy an objective analysis and a subjective analysis. The objective analysis requires a sufficiently serious deprivation; when dealing with medical conditions, a sufficiently serious medical condition is one that may result in death, degeneration, or chronic and substantial pain. *Green v. Senkowski*, 100 F. App'x 45, 46 (2d Cir. 2004). The subjective analysis requires that plaintiff show the defendant acted with the requisite culpable mindset, which can be shown where the official "knows

of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994).

Here, Plaintiff's deliberate indifference claim must fail because he is unable to satisfy the objective prong – that he experienced a sufficiently serious deprivation by way of a medical condition. Plaintiff complains that being fed food with allergens caused him stomach pains. (Compl. ¶ 45.) Courts have previously held that, without more, stomach pains are insufficient to serve as the predicate medical condition for an Eighth Amendment deliberate indifference claim. *See Mortimer Excell v. Fisher*, 2009 WL 3111711, at *4 (N.D.N.Y. Sept 24, 2009); *see also Pender v. McClellan*, 1996 WL 343253, at *4 (W.D.N.Y Feb. 5, 1996). Therefore, because Plaintiff cannot satisfy the objective component of the Eighth Amendment deliberate indifference analysis, the Court must dismiss Plaintiff's First Cause of Action without prejudice.

### B. Second Claim – Eighth Amendment Excessive Force Claim

Defendants in their motion do not move to dismiss Plaintiff's Second Cause of Action. (Mot. p. 1.) Therefore, Plaintiff's Second Cause of Action survives dismissal.

### C. Third Claim – Eighth Amendment Deliberate Indifference Claim

Plaintiff's Third Cause of Action appears to fashion several deliberate indifference claims against the Defendants. The Court addresses them in turn.

Regarding Plaintiff's deliberate indifference claim against Keyser and Sipple, the claims are predicated on the same facts and seek the same relief as Plaintiff's failure to protect claims against the Defendants under Plaintiff's Fifth Cause of Action. The Court is empowered to dismiss claims that are duplicative. *See Mitchell v. Am. Arb. Ass'n,* 2018 WL 10419732, *3 (S.D.N.Y. May 17, 2018); *see also Ningbo Yang Voyage Textiles Co. v. Sault Trading*, 2019 WL 5399973, *7 (E.D.N.Y. Sept. 10, 2019) (noting that "[c]ourts frequently dismiss duplicative claims that arise

'from the same facts' and seek 'the same relief as another claim'"). Therefore, Plaintiff's deliberate indifference claim against Keyser and Sipple must be dismissed without prejudice with leave to replead with distinct factual allegations and distinct requested relief.

Plaintiff then raises deliberate indifference claims against Buttles, specifically predicated on her purported failure to ensure Plaintiff received initial and follow up care for a litany of medical conditions, including a split lip, a broken tooth, head wounds and a sprained ankle. As discussed *supra*, in order to prosecute a deliberate indifference claim, a plaintiff must allege sufficiently serious medical conditions to invoke the protections of the Eighth Amendment. Here, Plaintiff does not sufficiently allege that his conditions "contemplate[e]d a 'condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998). Plaintiff only generally describes his medical conditions, for instance, stating that he experienced "pain." *See* (Compl. ¶¶ 44, 76, 84, 239). Without further factual averments, Plaintiff has not sufficiently alleged that he experienced a sufficiently serious condition such that he can state a plausible Eighth Amendment deliberate indifference claim against Buttles. Accordingly, the Court must dismiss Plaintiff's Third Cause of Action without prejudice.

### D. Fourth Claim – First Amendment Retaliation Claim

Defendants in their motion do not move to dismiss Plaintiff's Second Cause of Action. (Mot. p. 1.) Therefore, Plaintiff's Fourth Cause of Action survives dismissal.

### E. Fifth Claim – Failure to Protect Claim

In order to state a failure to protect claim in the context of a prison, a plaintiff must "plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020). Deliberate indifference "under the Eighth Amendment

standard means the official must know of and disregard an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Defendants are correct to note that, at times, Plaintiff's allegations surrounding his failure to protect claim are unspecific and do not delineate the allegations levied at each Defendant. Plaintiff at one point in the Complaint, for instance, merely states that "the failures of Defendants to take actions to prevent, intervene or stop the assaults while they were being committed constitutes a failure to protect." (Compl. ¶ 249.) If such allegations were all that the Complaint offered in this respect, then the Court would be inclined to find that Plaintiff impermissibly group pled his Fifth Cause of Action, thus warranting dismissal.

However, Plaintiff's allegations do not end there. He specifically avers the February 10, 2020 assault, where Elbert and E. Puerschner attacked Plaintiff in his cell, striking him with closed fist punches to Plaintiff's head, face, nose, mouth and body. (*Id*. ¶ 64.) Ryder witnessed said assault and even began his own assault against Plaintiff. (*Id*. ¶ 69.) Meanwhile, Wilson stood by silently witnessing the assault but taking no action to intervene. (*Id*. ¶ 70.) M. Puerschner also began to attack Plaintiff, and the other officers took no action to protect Plaintiff. (*Id*. ¶ 71.)

A correction officer's gratuitous use of force against a prisoner, and the failure by other corrections officer to intervene and protect the prisoner from such violence, always constitutes a failure to protect under the Eighth Amendment. A carceral setting where corrections officers are able to assault prisoners without concern for accountability clearly constitutes a "condition of confinement that objectively poses an unreasonable risk of serious harm to [the prisoner's] current or future health" and failure to intervene when witnessing a corrections officer's assault of a prisoner is *per se* evidence of "deliberate indifference" to the safety of a prisoner. *Semple*, 963 F.3d

9

259 at 273. Accordingly, the Plaintiff has sufficiently pled a failure to protect claim against the Defendants and the Court declines to dismiss Plaintiff's Fifth Cause of Action.

### F. Sixth Claim – Fourteenth Amendment Due Process Protections Claim

To successfully plead a due process claim under the Fourteenth Amendment, a plaintiff must "establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004).

Defendants do not seem to contest that Plaintiff's initial Tier III hearing on February 27, 2020, deprived Plaintiff of due process protections in the way that he was denied the right to call witnesses, attend his hearings and receive a written summation of the hearing ruling. (Mot. p. 17.) Rather, Defendants argument against Plaintiff's due process claim is that the claim must fail because he never actually served the SHU sentence that he was initially scheduled to serve as a consequence of his February 27, 2020 Tier III hearing. (Mot. p. 17.) Thus, the Court only considers whether Plaintiff suffered a deprivation in a liberty interest.

While the fact that Plaintiff never served any of his sentence in the SHU would counsel against finding that Plaintiff successfully pled a due process claim, Plaintiff's allegations do not end there. Plaintiff also alleges that immediately after the hearing he suffered a loss in his Progressive Inmate Movement System ("PIMS") status, which correspondingly resulted in a loss of privileges "such as phone calls weekly to family, static tablet time, access to personal property, phone calls to formerly incarcerated wife . . . and the blemish on Plaintiff['s] record." (Opp. ¶ 67.) Given that the prison facility has established a system through which prisoners are evaluated for eligibility for privileges, which impact the prisoner's conditions of confinement, the prison facility has created a liberty interest in ensuring that the PIMS status accurately reflects the factors that are

10

to be considered when assigning a level to an inmate, attaching due process protections. *Sealey v. Giltner*, 197 F.3d 578, 583-84 (2d Cir. 1999) (noting that a State "may under circumstances create liberty interests which are protected by the Due Process Clause"). Accordingly, because due process violations (the procedural deficiencies of Plaintiff's Tier III hearing that were subsequently overturned) led to a deprivation of a liberty interest (Plaintiff's PIMS status), Plaintiff has successfully stated a due process claim against the Defendants, and the Court declines to dismiss Plaintiff's Sixth Cause of Action.

### G. Seventh Claim – False Report Claim

It is a well-established principle that a prisoner "has no general constitutional right to be free from being falsely accused in a misbehavior." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Rather, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right." *Id*. Where the prisoner only offers "unsupported, speculative, and conclusory" allegations of such misconduct, a false report claim "may be dismissed on the pleadings." *Id*. (quoting *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993)).

Plaintiff's allegations are, at times, pled in conclusory fashion, such as when he generically asserts that the misbehavior reports at issue were drafted to "cover up" the actions of the Defendants. (Compl. ¶¶ 256-265.) At the same time, at various points in the Complaint does Plaintiff offer allegations that, among others, Defendants Elberth, M. Puerschner, E. Puerschner, and Wilson fabricated reports to cover up the alleged assault on February 10, 2020, which Plaintiff clearly pleads was in retaliation for his filing a lawsuit. *See generally* (Compl. ¶¶ 161-169, 172-176). It is no dispute that a prisoner's filing a lawsuit is constitutionally protected activity for the purposes of a false report claim and, in general, for establishing a Section 1983 claim. *See Everitt v. DeMarco,* 704 F. Supp. 2d 122, 132 (D. Conn. 2010); *see also Burroughs v. Petrone,* 138 F.

11

Supp. 3d 182, 206 (N.D.N.Y. 2015); *Johnson v. Eggersdorf,* 8 F. App'x. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003). Thus, Plaintiff is clearly fashioning a false report claim predicated on retaliatory conduct against his exercising constitutionally protected conduct. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's Seventh Cause of Action.

### H. Eighth Claim – Religious Land Use and Institutionalized Persons Act Claim

Plaintiff ceases to seek recovery under his Religious Land Use and Institutionalized Persons Act in his Opposition. (Opp. ¶ 80.) Therefore, the Court dismisses the claim without prejudice.

### I. Ninth Claim – First Amendment Free Exercise Protections Claim

Plaintiff's Ninth Cause of Action, a claim for violation of the First Amendment's protections of an individual's right to freely exercise their religious beliefs, fails to satisfy the pleading standard of Federal Rule of Civil Procedure 8. Plaintiff merely "lump[s] all defendants together" and asserts that his right to freely exercise his religion was violated by "Defendants refusal to accommodate Plaintiff's dietary restrictions, including his diet order, placed a substantial burden on Plaintiff's religious practices." (Compl. ¶ 279.) By engaging in such group pleading, the Complaint "does not afford these defendants fair notice of the basis for the claims against them." *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012). Accordingly, per the group pleading doctrine, Plaintiff's Ninth Cause of Action must be dismissed without prejudice.

### J. Tenth Claim - Declaratory Judgment Request

Under the Declaratory Judgment Act, the Court is empowered to "declare the rights and

other legal relations of any interested party seek[ing] such a declaration" in the event of an "actual controversy." 28 U.S.C. § 2201(a). When deciding whether to exercise the Court's "'permissive jurisdiction, a district court may consider equitable, prudential, and policy arguments, . . . and must examine the situation in its entirety.'" *Clear Channel Outdoor, LLC v. City of New Rochelle*, No. 20 CIV. 9296, at *13 (NSR), 2024 WL 2058645 (S.D.N.Y. May 7, 2024) (quoting *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023)). In particular, "[a] court must also consider (1) whether the judgment will serve as a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id*.

Plaintiff reasons that he is "entitled to a judgment declaring that Defendants['] actions and omissions . . . as stated above violated" his constitutional and statutory rights. (Compl. ¶ 292.) However, as discussed *supra*, whether to award declaratory judgment is well within the Court's discretion. Given the fact-intensive nature of this case and the myriad claims brought forth by the Plaintiff, the Court believes that awarding Plaintiff declaratory relief would be premature at this juncture. Therefore, the Court declines to exercise its permissive jurisdiction under the Declaratory Judgment Act and denies Plaintiff's request for declaratory judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' motion to dismiss *pro se* Plaintiff's claims. Specifically, the Court grants Defendants' motion to dismiss as to Plaintiff's First, Eighth, Ninth, and Tenth Causes of Action, and DENIES as to Plaintiff's Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action.

*Pro se* Plaintiff is granted leave to file an Amended Complaint (blank form attached hereto) by May 5, 2025. *Pro se* Plaintiff is advised that the Amended Complaint will replace, not

supplement, the Complaint, and so any claims that he wishes to pursue must be included in the Amended Complaint. Should *pro se* Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by May 30, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by June 9, 2025. If *pro se* Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. If no Amended Complaint is timely filed, Defendants are directed to answer or otherwise respond by May 30, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order by June 30, 2025.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 69, and to mail a copy of this Order to the *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

Dated:  March 18, 2025                                    SO ORDERED:
        White Plains, New York

                                                          _____
                                                          NELSON S. ROMÁN
                                                          United States District Judge

UNITED STATES DISTRICT COURT            Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                                     **CIVIL CASE DISCOVERY PLAN**

                Plaintiff(s),        **AND SCHEDULING ORDER**

    - against -

                Defendant(s).      _____ CV _____ (NSR)

---------------------------------------------------------------x

  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge